IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DEPARTMENT OF EDUCATION,    )        CIVIL NO. 08-00255 SOM/KSC
STATE OF HAWAII,            )
                            )
            Plaintiff,      )        ORDER REVERSING DECISION BY
                            )        ADMINISTRATIVE HEARING
        vs.                 )        OFFICER
                            )
KAREN I., in her capacity as )
parent and legal guardian of )
MARCUS I.,                  )
                            )
            Defendants.     )
_____ )

ORDER REVERSING DECISION BY ADMINISTRATIVE HEARING OFFICER

I.      INTRODUCTION.

        This case is before this court as an appeal from an

administrative ruling under the Individuals with Disabilities

Education Act, 20 U.S.C. §§ 1400 to 1487 ("IDEA").  Marcus I.,

born in 1993, is an autistic boy whose home school district is on

Maui, Hawaii.  Marcus was placed by the State of Hawaii's

Department of Education ("DOE") at Loveland Academy on Oahu,

Hawaii, to provide him with a free appropriate public education

("FAPE").  At issue here is whether the DOE must pay for Marcus's

housing (the residential placement) at Mana House for the 2006-07

school year under the IDEA.

        In an earlier administrative appeal, State Circuit

Court Judge Eden E. Hifo ruled that the DOE was not financially

responsible for Marcus's residential placement at Mana House for

the 2006-2007 school year.  She later clarified that ruling to

indicate that, although the DOE had not moved for summary judgment on the issue, she was granting the DOE summary judgment as a matter of law on the issue.  Marcus did not appeal that ruling.  Instead, he returned to the administrative hearing officer, who, apparently unaware of Judge Hifo's clarification, concluded that the issue had been remanded for further proceedings and ruled that the DOE had to pay for Marcus to live at Mana House for the 2006-07 school year.  The DOE appealed this subsequent administrative ruling, and the second appeal was assigned to Judge Hifo.  Marcus then removed the case to this court.

Judge Hifo's decision governs here, and the res judicata doctrine prevents Marcus from proceeding with the assertion that the DOE must pay for his residential placement at Mana House for the 2006-07 school year.

This court reverses the hearing officer and directs the Clerk of Court to enter judgment in favor of the DOE.  This court identifies no issue that must be remanded to the hearing officer.

II.    BACKGROUND.

Marcus is an autistic teenage boy whose school district, if he resided with his family, would be on the island of Maui, Hawaii.  It is undisputed that, beginning in August 2001, Marcus resided at Kahi Mohala, a psychiatric hospital on Oahu.  Marcus's mother testified that he had been "very

aggressive," causing her concern about him, her two younger
children, and herself.  She says that she "needed assistance as
far as mental health for him" and was referred to Kahi Mohala.
See Transcript of Proceedings (Jan. 8, 2008) at 141.  She
testified that the Department of Health paid for Marcus's stay at
Kahi Mohala.  Id. at 141-42; see also Transcript of Proceedings
(Jan. 9, 2008) at 225, 252, 254 (Testimony of Denise Guerin,
district education specialist, who indicated that the Department
of Health paid for Marcus to stay and be treated at Kahi Mohala).
There is no dispute that the DOE was not involved in Marcus's
placement at Kahi Mohala.

It appears that, since coming to Oahu, Marcus's school
has been the Loveland Academy.

Marcus's 2004-05 IEP noted that the IEP team "agrees
that current educational and residential placement continues to
be appropriate."  See Administrative Record on Appeal ("AR")
Vol. 1 at 79.  However, for the 2005-06 school year, Marcus's IEP
team decided to "transition" him from Loveland Academy to Haouli
Na Keiki on Oahu.  See AR vol. 2 at 1-7; 104-06.  On or about
March 31, 2006, Marcus's parents filed a request for a due
process hearing to challenge the move from Loveland Academy to
Haouli Na Keiki.  They asked that Marcus "stay put" until their
appeal was resolved.  Id. at 168-70.

3

In early August 2006, the DOE entered into a settlement with Marcus's parents under which Marcus continued to attend Loveland Academy through the 2006-07 school year.  <u>See</u> AR Vol. 1 at 79.  The parties further agreed that the DOE would "provide 1:1 adult supervision for Marcus during transportation" to and from his "residential placement."  <u>Id.</u>  The settlement agreement, however, did not address whether the DOE was responsible for providing Marcus with any "residential placement."  The Department of Health had been providing that residential placement up to that point.

Also in August 2006, Marcus was discharged from Kahi Mohala and placed by Child Protective Services in Mana House. <u>See</u> AR vol. 1 at 57, 175.

On or about August 7, 2006, the same day that Marcus's parents signed the settlement agreement, <u>see</u> AR vol. 1 at 82, the parents filed a request for a due process hearing, seeking an order requiring the DOE to pay for Marcus's housing costs during the 2006-07 school year.  The parents asked the due process hearing officer for a determination that the DOE had to pay for Marcus to stay at Mana House, arguing that Marcus would not be able to attend Loveland Academy if the DOE did not pay the Mana House costs.  <u>Id.</u> at 2.  The parents also challenged the DOE's alleged refusal to supply transportation between Mana House and

Loveland Academy.  <u>Id.</u> at 3.  This request for a due process

hearing was assigned case number DOE-SY607-025.  <u>See</u> <u>id.</u> at 6.

        An IEP meeting was held on September 8, 2006.  At that

meeting, Marcus's parents requested that "home placement" be

included in his educational placement.  <u>See</u> AR (Jan. 8, 2008) at

MI 069.  The DOE had earlier informed the parents that, because

Marcus was placed at Mana House by the parents (not the DOE), and

because the Department of Health had previously paid for Marcus's

housing, it was not the DOE's responsibility to pay the Mana

House costs.  The DOE noted that the parents may have qualified

for federal financial assistance, but, according to federal

statute, the parents were required to pay the first month at Mana

House.  <u>Id.</u> at MI 070.

        On or about September 15, 2006, Marcus's parents filed

a second request for a due process hearing.  This time, the

parents challenged the DOE's alleged refusal to determine

appropriate related services, requested that a residential

placement be included in Marcus's IEP, sought an apology from the

complex area superintendent, challenged the DOE's refusal to

provide transportation to and from school with a 1:1 aide, and

challenged the DOE's refusal to provide monthly transportation to

Oahu for Marcus's family to visit and transportation to Maui for

Marcus four times per year.  <u>See</u> AR Vol. 1 at 346-47.  This

request for a due process hearing was assigned case number DOE-SY607-042.  See id. at 350.

The two due process hearing requests were consolidated for hearing.  AR Vol. 1 at 20.

On October 20, 2006, Marcus's parents moved in the consolidated administrative proceeding for summary judgment.  See AR vol. 1 at 55.  In relevant part, they argued that the DOE had improperly refused to pay for Marcus's residential placement at Mana House, noting that the "residential program is . . . a necessary component of Marcus[]'s educational program."  Id. at 58.  The parents argued that, in asking Marcus to pay a one-time charge of approximately $8,000 to qualify for financial assistance for his stay at Mana House, the DOE failed to provide Marcus with a FAPE.  Id. at 59-60.

On October 24, 2006, the DOE moved to dismiss the consolidated due process appeals.  See AR vol. 1 at 90.  With respect to the residential placement claim, the DOE recognized that a FAPE sometimes includes residential placement under 34 C.F.R. § 300.104, which states, "If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child."  However, the DOE argued that it was not required to provide housing for Marcus because

his emotional needs were distinct from his academic needs.  Id. at 98.  The DOE contended that, whether the residential placement was a "related service" under the IDEA was to be determined by the student's IEP team, which should examine whether the placement was a response to medical, social, or emotional problems separate from the learning process.  The DOE argued that Marcus had moved to Oahu to deal with his mental health issues, then sought to be educated at Loveland Academy.  Id. at 100.  The DOE asserted that Marcus was eligible for residential aid under the non-DOE Developmental Disabilities Division ("DDD"), but that his parents had refused to sign the necessary waiver forms to allow him to remain at Mana House through DDD programs.  Id. at 100-01.

With respect to Marcus's claim that he was not being provided with 1:1 transportation to and from school, the DOE argued that it was indeed providing such transportation.  Id. at 101.  With respect to the claims that certain personnel be removed from his IEP team and that an apology be issued, the DOE argued that the hearing officer lacked jurisdiction to award such relief.  Id. at 101-02.

On November 21, 2006, the hearing officer, Richard A. Young, granted Marcus's motion for summary judgment, ruling that, under 34 C.F.R. § 300.104, the DOE was responsible for paying for his residential placement at Mana House.  AR vol. 1 at 175-76.

7

The hearing officer noted that the parties had entered into a settlement agreement, under which Marcus was to attend Loveland Academy.  The hearing officer reasoned that Marcus's residential placement at Mana House was "necessary to provide Marcus with special education and related services which the DOE must provide at no cost . . . ."  Id. at 176.  The hearing officer agreed with the DOE that he lacked jurisdiction to order that certain personnel be removed from Marcus's IEP team and that an apology be issued.  Id.

The DOE appealed the hearing officer's summary judgment order to state court.  This appeal was assigned to Judge Hifo as Civil Number 06-1-2204-12 EEH.  In the Opening Brief filed in that case, the DOE argued that, under 34 C.F.R. § 300.104, it was not obligated to pay for Marcus's residential placement because the residential placement addressed his medical, social, or emotional issues, rather than his education.  See Plaintiff's Opening Brief, Civil No. 06-1-2204-12 EEH (Mar. 14, 2007).  Marcus and his parents, on the other hand, argued that the DOE was required to pay for Marcus's residential placement under 34 C.F.R. § 300.104.  See Defendant's [sic] Answering Brief, Civil No. 06-1-2204-12 EEH (Apr. 18, 2007).

Judge Hifo held a hearing on May 16, 2007.  At the hearing, Judge Hifo orally reversed the hearing officer's decision.  See AR vol. 1 at 188.  Judge Hifo stated:

> There is, in the Court's mind, under this
> record insufficient basis under 34 C.F.R.
> 300.104, as a matter of law, to determine
> that the residential services are necessary
> for related services as the law is construed
> for educational purposes when everything else
> in the record makes it clear that his
> placement on Oahu for a therapeutic group
> foster home was used to treat mental health.

Transcript of Proceedings, Civil No. 06-1-2204 EEH (May 16, 2007).

On May 17, 2007, the day after Judge Hifo had orally reversed the hearing officer, the attorney for Marcus and his parents wrote to the hearing officer that the judge had "found insufficient factual basis on the record to support a summary judgment for the Petitioner" and had "ordered the Summary Judgment decision reversed." After stating that the "issue of the State's obligation to pay for Therapeutic Residential Care at Mana House . . . is back on track for full hearing," Marcus sought new administrative proceedings. See AR vol. 1 at 188. The attorney for Marcus and his parents told the hearing officer, "This hearing involves the final determination of the issue of whether or not the Department of Education is responsible for the payment of the Child and Family Service (CFS) residential program for Petitioner [Marcus]." Id. at 199.

On September 11, 2007, Judge Hifo filed a written order memorializing her oral reversal of the hearing officer. See Order Reversing the Administrative Hearing Decision on November

9

21, 2006 to Grant Defendants' Motion for Summary Judgment (Sept. 11, 2007) ("Judge Hifo Order") (attached as Exhibit A to Plaintiff's Opening Brief (Jan. 9, 2009)). Judgment was entered on September 11, 2007. The judgment stated that the November 21, 2006, decision by the hearing officer was reversed and that "All other claims, counterclaims, or cross-claims are dismissed without prejudice." See Judgment (Sept. 11, 2007). No appeal of Judge Hifo's decision was taken by either party.

The Judge Hifo Order identified the issue on appeal to her as being "whether the Hearing Officer erred when he granted Defendants' Motion for Summary Judgment on the issue regarding residential placement in a therapeutic group home without the IEP team consideration." Judge Hifo Order at 3. Judge Hifo noted, "The settlement agreement did not provide for Student's residential program." Id. at 3 n.2. Judge Hifo then examined 34 C.F.R. § 300.104, stating that it provides:

> If placement in a public or private
> residential program is necessary to provide
> special education and related services to a
> child with a disability, the program,
> including non-medical care and room and
> board, must be at no cost to the parents of
> the child.

Judge Hifo stated that whether placement is necessary for educational purposes under the IDEA turns on whether the placement is a response to a medical, social, or emotional problem that is necessary beyond the learning process. She noted

10

that Congress did not intend to burden local schools with the

provision of all services to handicapped children.  Id. at 7.

Judge Hifo then held:

> [T]he settlement agreement, which predated
> the change in residential treatment program,
> did not obligate the Plaintiff [the DOE] to
> the change in placement based on non-
> educational needs and by non-IEP team
> members.  The discharge of Student [Marcus]
> by the mental health treatment facility [Kahi
> Mohala] was done . . . outside the scope of
> the Student's educational needs and
> therefore, as a matter of law, outside the
> narrow parameters for which the Plaintiff is
> obligated.

Id.  Judge Hifo therefore reversed the hearing officer's grant of

summary judgment to Marcus and his parents.  Id. at 8.[1]

In October 2007, Marcus's father died.  See AR vol. 1

at 332.

On December 31, 2007, after Judge Hifo had filed her

written order, the DOE filed its opening brief with the hearing

officer.  The DOE argued that, according to the Judge Hifo Order,

the Department of Health, not the DOE, was responsible for paying

for Marcus's residential placement at Mana House.  See AR vol. 1

at 257.

_____

[1]In the Supplemental Brief filed with this court on
March 24, 2009, Marcus and his mother argue that, because Judge
Hifo earlier framed the issue as one of whether the hearing
officer had erred in granting their motion for summary judgment
"regarding residential placement in a therapeutic group home
without IEP team consideration," Judge Hifo's order was limited
to whether it was improper to determine residential placement
without consideration by the IEP team.

On January 4, 2008, the DOE moved to dismiss the matter
before the hearing officer, arguing that Judge Hifo had
determined that the DOE was not financially responsible for
Marcus's residential placement.  See AR vol. 1 at 262.  The DOE
argued that the hearing officer should not be asked to determine
that the DOE was financially responsible for Marcus's residential
placement at Mana House.  Id.

The hearing officer continued a January 8, 2008,
hearing to February 11, 2008, to allow Marcus to seek
clarification of the Judge Hifo Order.  See AR vol. 1 at 331;
Transcript of Proceedings (Feb. 11, 2008) ("We had heard the
first part of that motion to dismiss on January 8, 2008. . . . At
that time, I had given the petitioners' counsel, Mr. Bassett,
more time to clarify what Judge Hifo meant in her September 11,
2007, decision . . . .").  Marcus did not file a motion seeking
such clarification until February 1, 2008.  See Motion for an
Order for Relief From Judgment, Civil No. 06-1-2204-12 EEH (Feb.
1, 2008).  In the motion, Marcus argued to Judge Hifo that she
should have remanded the case to the administrative law judge.
Id.  The DOE, on the other hand, argued that a remand was
unnecessary "because the Judge's decision was correct and there
was no need for the DCCA Hearing Officer to hear [any] more
evidence on the issue of whether the DOE was responsible for the
payment of the residential placement of the student."  See

12

Plaintiff's Memorandum in Opposition to Defendants' Motion for an Order for Relief from Judgment, Civil No. 06-1-2204-12 EEH (Apr. 2, 2008).

On March 10, 2008, while Marcus's motion was awaiting a hearing before Judge Hifo, Marcus argued to the hearing officer that Judge Hifo had only examined whether the settlement agreement obligated the DOE to pay for Marcus's change in residential placement from Kahi Mohala to Mana House based on noneducational needs and based on non-IEP team members' decisions.  <u>See</u> AR vol. 1 at 281.

On April 9, 2008, Judge Hifo heard Marcus's motion for relief from judgment.  At the hearing, Judge Hifo noted that, although the DOE had not filed a motion for summary judgment, the appeal had involved a question of law and she had intended for the DOE to prevail as a matter of law.  Citing <u>Cordeiro v. Burns</u>, 7 Haw. App. 463, 471-72, 776 P.2d 411, 417-18 (1989), Judge Hifo noted that, to expedite matters in which the nonmoving party should prevail as a matter of law, she had intended that judgment be entered in favor of the DOE.  Judge Hifo then told Marcus and his mother that she understood that they wanted clarification of her earlier order and that, based on <u>Cordeiro</u>, she believed that she had clarified her earlier order to indicate that she had intended that the DOE prevail as a matter of law.  <u>See</u> Transcript of Proceedings, Civ. No. 06-1-2204-12 EEH (Apr. 9, 2008).

13

On April 11, 2008, two days after Judge Hifo had clarified her ruling, the hearing officer issued Findings of Fact, Conclusions of Law and Decision.  See AR vol. 1 at 329. Nothing in the record in the present case indicates that either party told the hearing officer about Judge Hifo's oral ruling that the DOE had prevailed on the issue of residential placement as a matter of law.  Presumably unaware of Judge Hifo's April 9 ruling, the hearing officer ruled that the Judge Hifo Order "does not specifically state that Respondent [the DOE] is not financially responsible for the residential component of Petitioners' [Marcus's] educational program."  Id. at 331.  The hearing officer interpreted the Judge Hifo Order as only reversing the earlier grant of summary judgment, leaving open the question of whether the DOE was financially responsible for paying for Mana House.  Id.  The hearing officer said that Judge Hifo had not considered whether the DOE was financially responsible for Mana House costs because, at the end of the school day, Marcus, whose home was on a different island, had to be housed somewhere on Oahu.  Id. at 337.

The hearing officer concluded that Marcus's housing was a service "related" to his placement at Loveland Academy that the DOE was obligated to pay for, given the DOE's agreement to send Marcus to school on Oahu.  Id. at 337, 340.  In concluding that the residential placement was a "related service," the hearing

14

officer relied on Hawaii Administrative Rule section 8-56-2.[2]  He
appears to have also relied on section 8-56-47, which provides:
"If placement in a public or private residential program is
necessary to provide special education and related services to a
student with a disability, the program, including non-medical
care and room and board, shall be at no cost to the parent of the
student."  This provision is identical to 34 C.F.R. § 300.104.

    The hearing officer then determined that the DOE had
failed to provide Marcus with a FAPE because his IEP did not
specifically state that his family would be flown to Oahu once a
month and that Marcus would be flown to Maui four times per year.
Id. at 338.  Visitation is not an issue on appeal.  See Opening
Brief (Jan. 9, 2009) at 4-5 (defining the issues on appeal as

---

[2]Section 8-56-2 defines "Related services" as

transportation and such developmental,
corrective, and other supportive services as
are required to assist a student with a
disability to benefit from special education,
and includes speech-language pathology and
audiology services, psychological services,
physical and occupational therapy,
recreation, including therapeutic recreation,
early identification and assessment of
disabilities in children, counseling
services, including rehabilitation
counseling, orientation and mobility
services, and medical services for diagnostic
or evaluation purposes.  The term also
includes school health services, social work
services in schools, and parent counseling
and training.

those pertaining to the residential placement); AR vol. 1 at 180 (indicating that the visitation issue has been settled).

On May 9, 2008, the DOE appealed the hearing officer's second summary judgment ruling to the Circuit Court of the First Circuit, State of Hawaii. See Ex. B to Plaintiff's Opening Brief (Jan. 9, 2009). According to the State Court Docket, the second appeal was also assigned to Judge Hifo. See http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm?spawn=1, 1CC08-1-000938, Docket Entry No. 0000001 (indicating that "CASE ASSIGNED TO JUDGE EDEN E HIFO").

On May 30, 2008, Marcus and his mother removed the second appeal to this court. See Notice of Removal (May 30, 2008).

On October 24, 2008, Judge Hifo filed a written order in the original state case memorializing her oral ruling of April 9, 2008, in that case. This written order stated that,

> in light of Cordeiro v. Burns, 7 Haw. App. 463, 776 P.2d 411 (1989)[,] the Court made the proper ruling in reversing the November 21, 2006 decision of the DCCA administrative Hearing Officer, granting "summary judgment in favor of a non-moving 'prevailing party' where there is no genuine issue as to any material fact." Id. at 471.

Order Denying Defendants' Motion for an Order for Relief From Judgment, Civil No. 06-1-2204-12 EEH (Oct. 24, 2008).[3]

---

[3]Marcus's Opposition Brief, filed on February 6, 2009, raises new issues. Marcus says, for example, that this court

III.        <u>STANDARD OF REVIEW.</u>

Any party aggrieved by a decision of a due process
hearing officer under the IDEA may appeal the findings and
decision to the state educational agency, 20 U.S.C. § 1415(g), or
appeal the findings and decision to any state court or a United
States district court.  20 U.S.C. § 1415(i)(2).

The burden in this court is on the DOE, the party
challenging the administrative ruling.  <u>Seattle Sch. Dist.,
No. 1</u>, 82 F.3d at 1498.  However, judicial review of IDEA cases
differs substantially from judicial review of other agency
actions, in which courts generally are confined to the
administrative record and are held to a highly deferential
standard of review.  <u>Ojai Unified Sch. Dist. v. Jackson</u>, 4 F.3d
1467, 1471 (9th Cir. 1993).  Courts review <u>de novo</u> the
appropriateness of a special education placement under the IDEA.
<u>County of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d
1458, 1466 (9th Cir. 1996).  Nevertheless, when reviewing state
administrative decisions, courts must give due weight to

---

should determine that the DOE improperly refused to indicate
parental and child visits in the IEP of September 8, 2006.  This
issue appears to have been decided by the hearing officer in his
favor, and the DOE did not appeal the issue.  Because Marcus did
not file a cross-appeal, the matter is not properly before the
court.  Similarly, Marcus argues that the DOE is responsible for
providing transportation for Marcus's mother to and from Mana
House or Loveland Academy for parental training.  Again, this
issue is not properly before this court; the only issue on appeal
pertains to residential placement during the 2006-07 school year.

judgments of education policy.  <u>County of San Diego</u>, 93 F.3d at 1466; <u>Ojai</u>, 4 F.3d at 1472.  The IDEA does not empower a court to substitute its own notion of sound educational policy for that of the school authorities that the court reviews.  <u>County of San Diego</u>, 93 F.3d at 1466; <u>Ojai</u>, 4 F.3d at 1472; <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987).  In recognition of the expertise of the administrative agency, the court must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue.  After such consideration, the court is free to accept or reject the findings in whole or in part.  <u>County of San Diego</u>, 93 F.3d at 1466; <u>Gregory K.</u>, 811 F.2d at 1311.  Despite its discretion to reject the administrative findings after carefully considering them, a court is not permitted simply to ignore the administrative findings.  <u>County of San Diego</u>, 93 F.3d at 1466; <u>Gregory K.</u>, 811 F.2d at 1311.

IV.     <u>ANALYSIS.</u>

     The DOE argues that, under the <u>Rooker-Feldman</u> doctrine, this court cannot reverse the Judge Hifo Order.  As a general principle, this court may not exercise appellate jurisdiction over state court decisions.  <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 482-86 (1983); <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 415-16 (1923).  This rule, commonly known as the <u>Rooker-Feldman</u> doctrine, requires that:

18

> a losing party in state court is barred from
> seeking what in substance would be appellate
> review of the state judgment in a United
> States District Court, based on the losing
> party's claim that the state judgment itself
> violates the loser's federal rights.

Bennett v. Yoshina, 140 F.3d 1218, 1223 (9th Cir. 1998) (quoting

Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994)).

The losing party in state court, Marcus, is not seeking

appellate review of the Judge Hifo Order.  Instead, it is the

DOE, the prevailing party before Judge Hifo, that is seeking in

this administrative appeal to enforce her order.  The actual

administrative ruling from which the DOE appeals is not a ruling

that Judge Hifo has reviewed or ruled on at all.  Under the

circumstances, it cannot be said that this case presents an

appeal from any order by Judge Hifo.

The inapplicability of the Rooker-Feldman doctrine does

not, however, mean that the Judge Hifo Order is irrelevant to

this court's analysis.  The Judge Hifo Order is not only

relevant, it is determinative, but on preclusion grounds that do

not call into question any Rooker-Feldman analysis.

Marcus appears to have removed this matter to

accomplish judge-shopping, in the hope of getting around an

adverse ruling by Judge Hifo.  As clarified by Judge Hifo at the

April 9, 2008, hearing and in her October 24, 2008, order, Judge

Hifo intended to grant summary judgment in favor of the DOE on

the issue of whether the DOE was financially responsible for

19

Marcus's residential placement for the 2006-07 school year. Instead of taking a direct appeal in the state appellate court from Judge Hifo's clarifying order, Marcus and his mother continued to press the hearing officer for a ruling on the very issue Judge Hifo had addressed.

It does not appear that the hearing officer was made aware of Judge Hifo's oral ruling on April 9, 2008. This court has no reason to think that the hearing officer deliberately ignored a judicial grant of summary judgment in favor of the DOE on the issue of who was responsible for paying for Marcus's residential placement for the 2006-07 school year. The hearing officer appears to have ruled in favor of Marcus and his mother the second time around without knowing of Judge Hifo's clarification. Marcus and his mother appear to this court to have wanted to avoid having Judge Hifo review the second administrative ruling. Unfortunately for them, this blatant judge-shopping is to no avail. As a matter of law, Judge Hifo's earlier ruling on the issue of financial responsibility for Marcus's residential placement for the 2006-07 school year has preclusive effect.

Generally speaking, claim preclusion, or res judicata, prohibits a party from relitigating a previously adjudicated cause of action. Dorrance v. Lee, 90 Haw. 143, 148, 976 P.2d 904, 909 (1999). The preclusive effect in this court of a Hawaii

state court decision is determined by Hawaii law.  Pedrina v.

Chun, 97 F.3d 1296, 1301 (9th Cir. 1996) ("In determining whether

a prior state court action bars a subsequent federal action, the

federal court must look to the res judicata principles of the

state court in which the judgment was rendered."); In re Russell,

76 F.3d 242, 244 (9th Cir. 1995) ("Because the underlying

judgment was rendered in state court, we must apply California's

res judicata and collateral estoppel principles.").

          Under Hawaii law, the doctrine of res judicata applies

when: 1) the claim asserted in the action in question was or

could have been asserted in the prior action, 2) the parties in

the present action are identical to, or in privity with, the

parties in the prior action, and 3) a final judgment on the

merits was rendered in the prior action.  Pedrina, 97 F.3d at

1301 (citing Santos v. State of Hawaii, 64 Haw. 648, 646 P.2d

962, 966 (1982)); Morneau v. Stark Enters., Ltd., 56 Haw. 420,

422-23, 539 P.2d 472, 474-75 (1975) (the "judgment of a court of

competent jurisdiction is a bar to a new action in any court

between the same parties or their privies concerning the same

subject matter, and precludes the relitigation, not only of the

issues which were actually litigated in the first action, but

also of all grounds of claim and defense which might have been

properly litigated in the first action but were not litigated or

decided.").

Res judicata prevents a multiplicity of suits, averts inconsistent results, and provides a limit to litigation by promoting finality and judicial economy.  <u>Dorrance</u>, 90 Haw. at 148-49, 976 P.2d at 909-10.  Res judicata serves to relieve parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudications.  It therefore furthers the interests of litigants, the judicial system, and society by bringing an end to litigation when matters have already been tried and decided on the merits.  See <u>Kauhane v. Acutron Co.</u>, 71 Haw. 458, 463, 795 P.2d 276, 278-79 (1990).  The doctrine permits every litigant to have an opportunity to try its case on the merits, but it limits the litigant to one such opportunity.  <u>Id.</u>; <u>accord</u> <u>Pedrina v. Chun</u>, 906 F. Supp. 1377, 1398 (D. Haw. 1995) (stating that the res judicata doctrine protects the integrity of the courts and promotes reliance on judicial pronouncements by requiring that the decisions and findings of the courts be accepted as undeniable legal truths), <u>aff'd</u>, 97 F.3d 1296 (9th Cir. 1996).

Claim preclusion applies here.  Claim preclusion applies because the claim asserted here--whether the DOE is financially responsible for Marcus's residential placement at Mana House for the 2006-07 school year--was or could have been asserted in the prior action, the parties in the present action

are identical to the parties in the prior state-court action, and a final judgment on the merits was rendered in the prior state-court action.[4]  See Pedrina, 97 F.3d at 1301.

Marcus argues that the Judge Hifo Order should not be given preclusive effect because "several unresolved issues" were not included in the summary judgment motion that Judge Hifo reviewed.  Whether Judge Hifo correctly determined that the DOE was entitled to judgment on the claim that the DOE was financially responsible for paying for Marcus's placement at Mana House in the 2006-07 school year is something that Marcus could have appealed.  Certainly, on April 9, 2008, when Judge Hifo orally clarified her ruling, and on October 24, 2008, when she filed her written ruling, Marcus knew that Judge Hifo intended for her order to be the final word on the issue.  Because Marcus did not appeal the ruling or even ask for further clarification, it does not now matter whether Judge Hifo decided every argument regarding residential placement or whether Judge Hifo erred in her analysis.  Judge Hifo's decision "is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action,

_____

[4]The court is unpersuaded by Marcus's argument that the Judge Hifo Order was limited to the issue of whether the DOE decided residential placement without IEP team consideration.  See Supp. Mem. (Mar. 24, 2009).  The text of the Judge Hifo Order clearly indicates that it was not so limited.

23

but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." See Morneau, 56 Haw. at 422-23, 539 P.2d at 474-75 (1975) (emphasis added).

Marcus asserts that preclusion is inapplicable because the matter was not decided as a result of a full and fair litigation process.  However, the issue of whether the DOE was financially responsible for Marcus's residential placement at Mana House was fully briefed by both parties.  Judge Hifo decided as a matter of law that the DOE had no such responsibility and sua sponte determined that the DOE was entitled to summary judgment on the issue.  This procedural posture does not indicate that Marcus was denied a full and fair opportunity to litigate the issue.  If Marcus thought that Judge Hifo's order was too broad, he could have asked her to restrict it or he could have appealed.  Having done neither, he cannot now argue that he is not bound by her decision on the matter.

Finally, Marcus argues that the DOE should be judicially estopped from taking inconsistent positions in this court.  Marcus says that, in an appeal before the Honorable David Alan Ezra, the DOE is arguing that Marcus's residential placement for the 2007-08 school year should be in the Five Oaks treatment facility in Texas.  The appeal before Judge Ezra involves a different school year and a different IEP.  On the record in this

24

case, this court cannot conclude that the DOE is taking inconsistent positions justifying estoppel.

V.          CONCLUSION.

For the foregoing reasons, the court reverses the hearing officer and rules that the Judge Hifo Order has preclusive effect.  The DOE is not financially responsible for Marcus's stay at Mana House during the 2006-07 school year.

The Clerk of Court is directed to enter judgment in favor of the DOE and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 10, 2009.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Department of Educ., State of Haw. v. Karen I, Civ. No. 08-00255 SOM/KSC; ORDER REVERSING DECISION BY ADMINISTRATIVE HEARING OFFICER